UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Brian Todd Gore,

Petitioner,

vs.                                           REPORT AND RECOMMENDATION

Dwight L. Fondren, Warden,

Respondent.          Civ. No. 07-4425(ADM/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. Introduction

This matter came before the undersigned United States Magistrate Judge

pursuant to a general assignment, made in accordance with the provisions of Title 28

U.S.C. §636(b)(1)(B), upon a Petition for a Writ of Habeas Corpus under Title 28

U.S.C. §2241.   For reasons which follow, we recommend that the Petition for a Writ

of Habeas Corpus be denied as moot.

## II. Factual and Procedural Background

In 2003, the Petitioner was prosecuted in this District for the Possession of

Cocaine with Intent to Distribute, in violation of Title 21 U.S.C. §§841(a)(1), and

(b)(1)(B).   See, United States v. Gore, Crim. No. 03-294(2)(DSD/JSM).   The

Petitioner pled guilty to that charge and, on January 27, 2004, the District Court sentenced him to sixty (60) months in Federal prison, to be followed by four (4) years of supervised release. Shortly thereafter, the Petitioner began serving his sentence at the Federal Correctional Institution, in Waseca, Minnesota, ("FCI-Waseca").

While the Petitioner was at FCI-Waseca, the Bureau of Prisons, ("BOP"), determined that he was eligible to participate in a Residential Drug Abuse Program ("RDAP"). If an inmate successfully completes the RDAP, the BOP can, at its discretion, reduce the inmate's sentence by as much as twelve (12) months. See, Title 18 U.S.C. §3621(e).

In July of 2004, the Petitioner applied for the RDAP, and signed an agreement that explained the terms and conditions of the program. See, Declaration of Angela Buege ("Buege Decl."), Docket No. 5, ¶4. In November 2004, the Petitioner actually began to participate in the RDAP at FCI-Waseca. Id. at ¶5. By August of 2005, the Petitioner had completed the "residential component" of the RDAP, which consists of 500 hours of individual and group activities, which was provided by specialists in drug abuse treatment. Id. at ¶5, n. 1. In September of 2005, the Petitioner was transferred to the Federal Prison Camp, in Duluth, Minnesota, ("FPC-Duluth"), in

order to begin the second phase of the RDAP, which is known as the transitional services/aftercare program. Id. at ¶6.

On December 6, 2006, while the Petitioner was still in the transitional services/aftercare program at FPC-Duluth, he was involved in a fight with another inmate. Id. at ¶7. The Petitioner claims that he was attacked without warning, by two (2) other inmates, and that he simply tried to defend himself from the unprovoked attack. See, Petition, Docket No. 1, p. 7; see also, Petitioner's Letter (December 4, 2007), Docket No. 9, p. 1. As a result of that incident, formal disciplinary charges were filed against the Petitioner, and he was charged with violating a BOP Regulation that prohibits "fighting." See, Buege Decl., supra at ¶7.

When a Federal prisoner is charged with violating the BOP's rule against fighting, a Hearing on the matter is conducted by a BOP Disciplinary Hearing Officer ("DHO"). See, 28 C.F.R. §§541.16 and 541.17. On January 25, 2007, the DHO found that the Petitioner had committed the prohibited act of fighting. See, Buege Decl., supra at ¶ 7. Federal prisoners have a right to appeal DHO decisions, and DHOs are required to inform prisoners of their right to appeal. See, 28 C.F.R. §541.19. However, it appears, from the Record presented, that the Petitioner made no effort to appeal the DHO's ruling in his disciplinary proceeding.

On December 11, 2006, a few days after the fighting incident, the Petitioner was "temporarily" moved from FPC-Duluth, to the Federal Correctional Institution in Sandstone, Minnesota, ("FCI-Sandstone"). See, Buege Decl., supra at ¶7, n. 2. Shortly after the DHO found the Petitioner guilty of fighting, he was formally "designated" to remain at FCI-Sandstone. Id.

Under the BOP Regulations governing the RDAP sentence reduction program, an inmate who is found guilty of certain offenses, including fighting, may lose his eligibility for a sentence reduction under Section 3621(e). See, 28 C.F.R. § 550.56(d)(2). As a result, after the Petitioner was found guilty of fighting, in January of 2007, "his status was changed to 18 U.S.C. Section 3621 release ineligible." Buege Decl., supra at ¶7. In other words, the Petitioner was declared ineligible for an early release under the RDAP program, because he had been found guilty of fighting.

In February of 2007, the Petitioner asked the BOP to restore his eligibility for early release under Section 3621 and, on March 30, 2007, his status was changed back to "18 U.S.C. Section 3621(e) eligible." Id. at ¶8. However, during the summer of 2007, the Petitioner was repeatedly warned about conduct issues that could cause him

to lose his sentence reduction eligibility once again. Id. at ¶10.[1]  Unfortunately, the

Petitioner's conduct only worsened after those warnings were given, and finally, on

or about September 20, 2007, the Petitioner's "status was again changed to 18 U.S.C.

Section 3621(e) release ineligible." Id. at ¶11.

The Petitioner is now asking this Court to issue a Writ of Habeas Corpus that

would restore his eligibility for an early release under Section 3621(e). He claims that

he should not have been found guilty of fighting while he was at FPC-Duluth, because

he was acting in self-defense, and he argues that the DHO's ruling on the fighting

charge, therefore, should be vacated. The Petitioner further claims that his eligibility

for early release should be reinstated, and that he should be released from custody.

However, according to the BOP's Internet Website, the Petitioner was released from

custody on August 26, 2008. As a result, the Petitioner is no longer under the

Respondent's custody or supervision at FCI-Sandstone, and he has been granted the

relief that he originally sought in his Petition.

Since the Petitioner is no longer held in custody by the Respondent at FCI-

Sandstone, we must first consider whether there still is any "live" case or controversy,

---

[1]The incidents, which occurred during the summer of 2007, are described in detail in various reports that are included in the Respondent's Return. See, Docket No. 4, Attachments I, J, K, L, M and N.

which can properly be redressed by a Writ of Habeas Corpus.  We conclude that there is no longer any genuine case or controversy presented, and that no meaningful relief could be provided to the Petitioner by a Writ of Habeas Corpus.

### III.  Discussion

A.      Standard of Review.  Article III of the Constitution allows Federal Courts to adjudicate only actual, ongoing cases or controversies.  See, Americans United for Separation of Church and State v. Prison Fellowship Ministries, 509 F.3d 406, 420-21 (8th Cir. 2007), citing Haden v. Pelofsky, 212 F.3d 466, 469 (8th Cir. 2000); Potter v. Norwest Mortgage, Inc., 329 F.3d 608, 611 (8th Cir. 2003).  "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate" and, "[w]hen an action no longer satisfies the case or controversy requirement, the action is moot and a federal court must dismiss the action."  Potter v. Norwest Mortgage, Inc., supra at 611 [citations and internal quotations omitted].

The ongoing case-or-controversy requirement is no longer met if an event occurs, during the course of the proceedings, which precludes the Court from granting any meaningful relief to the party who initiated the action.  See, In re Security Life Insurance Co. of America, 228 F.3d 865, 869-70 (8th Cir. 2000), citing In re Grand Jury Subpoenas Duces Tecum, 78 F.3d 1307, 1310 (8th Cir. 1996), cert. denied, 519

U.S. 980 (1996).  If it becomes impossible for the Court to provide any further redress

for the claims that have been raised, the case must be dismissed as moot.  See, Lewis

v. Continental Bank Corp., 494 U.S. 472, 477 (1990); Potter v. Norwest Mortgage,

Inc., supra at 611.  In addition, as a general rule, when a Habeas petitioner protests the

conditions of his confinement, his claim becomes mooted when those conditions no

longer exist.  See, Miller v. Whitehead, 527 F.3d 752, 756 (8th Cir. 2008), citing

Calderon v. Moore, 518 U.S. 149, 150 (1996); Thompson v. Smith, 719 F.2d 938,

940-41 (8th Cir. 1983)(Habeas claims mooted due to the petitioner's transfer to another

institution); Willis v. Ciccone, 506 F.2d 1011, 1019 (8th Cir. 1974).

The claims of a Habeas petitioner cannot be moot as long as that petitioner

remains incarcerated because, in such cases, a Writ of Habeas Corpus can always

provide meaningful relief -- namely, release from prison. See, Spencer v. Kemna, 523

U.S. 1, 7 (1998)("Spencer III").  Once a Habeas petitioner is released from custody,

however, his case becomes moot, unless he can show that a Writ of Habeas Corpus

would still provide him some genuine benefit.  Id.

If a Habeas petitioner is challenging a criminal conviction, then a Writ of

Habeas Corpus can still benefit him, even after he has been released from custody, by

eliminating some of the "collateral consequences that attached to the conviction as a

matter of law."  Id. at 9, citing Carafas v. LaVallee, 391 U.S. 234, 237 (1968).  Such

"collateral consequences" might include restrictions on the right to vote, the right to

own a gun, the right to serve on a Jury, or the right to engage in certain types of

businesses or professions.  However, a Habeas petitioner cannot rely on the collateral

consequences of a wrongful criminal conviction to save his case from mootness, if he

is not actually challenging the validity of his conviction.

In Spencer III, the Supreme Court considered whether a Writ of Habeas Corpus

could still provide any meaningful post-release benefit to a prisoner who was not

challenging his criminal conviction.  There, the petitioner was not attacking his

original criminal conviction, but rather, he claimed only that he had been wrongfully

returned to prison pursuant to an erroneous revocation of his parole.  By the time the

matter came before the Federal District Court, however, the petitioner had already

been released from prison.  The District Court concluded that the Petition would have

to be summarily dismissed, without reaching the merits of the petitioner's challenge

to his Parole Revocation proceedings, because the petitioner was no longer "in

custody."  Our Court of Appeals affirmed the dismissal order, see, Spencer v. Kemna,

91 F.3d 1114 (8th Cir. 1996)("Spencer II"), and the case proceeded to the United

States Supreme Court.

The Supreme Court initially observed that the District Court had erred by dismissing the case pursuant to the "in custody" requirement which is prescribed by the Federal Habeas Statutes. The Court noted that the petitioner "was incarcerated by reason of the parole revocation at the time the Petition was filed, which is all the 'in custody' provision of 28 U.S.C. §2254 requires." Spencer III, supra at 7. The Court then addressed "[t]he more substantial question" of "whether [the] petitioner's subsequent release caused the petition to be moot because it no longer presented a case or controversy under Article III, §2, of the Constitution." Id.

To resolve the case-or-controversy issue, the Supreme Court considered whether the petitioner's Parole Revocation Order would continue to have any type of collateral consequences following his release from prison. The Court concluded that there were no collateral consequences, which resulted from the petitioner's Parole Revocation Order. Once the petitioner reached the end of his Parole Revocation confinement, and was wholly released from State custody, he could no longer gain any meaningful benefit from a Writ of Habeas Corpus. Thus, the Habeas action had become moot.

B.   Legal Analysis. The Supreme Court's decision, in Spencer III, compels us to conclude that it is not now possible to provide any beneficial redress to the

Petitioner by a Writ of Habeas Corpus.  Since the Petitioner is no longer serving his

term of incarceration, and he has been fully released from his Federal confinement at

FCI-Sandstone, it would be meaningless to grant him the Writ of Habeas Corpus that

he has requested, even if we concluded that his request for Habeas relief was

meritorious.  See, Sobie v. Morrison, 2006 WL 2439099 at *1 (D. Minn., August 22,

2006)(finding Habeas Petition seeking early placement in RRC moot after petitioner

transferred to halfway house, where he would remain until projected release date),

citing Murphy v. Hunt, 455 U.S. 478, 481 (1982), and Copley v. Keohane, 150 F.3d

827, 829-30 (8th Cir. 1998)(finding Habeas Petition moot after conditional release of

petitioner).

Furthermore, because the Petitioner is not now challenging his original criminal

conviction, he cannot rely on any collateral consequences of that conviction in

attempting to satisfy the Constitution's case-or-controversy requirement.  See, Lane

v. Williams, 455 U.S. 624, 631 (1982)("Since respondents only elected to attack their

sentences, and since those sentences expired during the course of these proceedings,

this case is moot.").

For purposes of determining whether there still is a "live" case or controversy,

that is presented by this case, it does not matter that the Petitioner may still be subject

to conditions of probation, and that he may still be returned to prison if he violates those conditions. The Petitioner's future probation status is governed by the terms of his original sentence, which is not at issue here. The decision as to whether the Petitioner was entitled to a reduction in sentence under Title U.S.C. §3621(e), following completion of the RDAP, will no longer affect the Petitioner, now that he has been released from prison. In short, the Petitioner's future probation status will be determined by his future conduct -- not by whether he had completed the RDAP.

Even if the Petitioner's alleged failure to complete the RDAP could somehow be used against him in a future Supervised Release Revocation proceeding, or in a future criminal case, that would not be a sufficient collateral consequence to create a "live" case or controversy. The Supreme Court considered, and rejected that theory, with respect to Parole Revocations, ruling that the case or controversy requirement could not be satisfied by the mere "possibility" that a Parole Revocation might have some future adverse consequences. See, Spencer III, supra at 14. The Petitioner's failure to receive credit for completion of some of the phases of the RDAP will not cause him any adverse consequences in the future, as long as he abides by the law, and the conditions of his placement, as he obviously is expected, and required, to do. See,

Spencer III, supra at 15 (rejecting a suggested collateral consequence that "was contingent upon * * * violating the law, getting caught, and being convicted").

In sum, we conclude that, as was the case in Spencer III, there is no longer any "live" case or controversy to be decided, and therefore, we recommend that the Petition be dismissed as moot.[2]

NOW, THEREFORE, It is --

---

[2]As a final observation, we note that, even if the Petitioner's current claim for relief could properly be adjudicated here, and even if the claim was found to be meritorious, it appears highly doubtful that the Petitioner could be awarded any meaningful relief in this action. It is well-settled that Federal prisoners must exhaust their available administrative remedies before seeking Federal Habeas Corpus relief under Title 28 U.S.C. §2241, see, United States v. Chappel, 208 F.3d 1069, 1069-70 (8th Cir. 2000) (per curiam), and the Petitioner has acknowledged that he failed to exhaust his administrative remedies prior to filing his Petition with this Court. See, Petitioner's Reply Memorandum, Docket No. 11, p. 1. Federal prisoners must satisfy the exhaustion of administrative remedies requirement before seeking Habeas Corpus relief, "except in the most unusual circumstances," Willis v. Ciccone, 506 F.2d 1011, 1015 (8th Cir. 1974), and the Petitioner has not demonstrated such circumstances here.

RECOMMENDED:

That the Petition for Writ of Habeas Corpus [Docket No. 1] be dismissed as moot.


Dated:  September 5, 2008                    s/Raymond L. Erickson
                                             Raymond L. Erickson
                                             CHIEF U.S. MAGISTRATE JUDGE


**N O T I C E**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties by no later than **September 22, 2008**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than September 22, 2008**, unless all interested

parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to

review the transcript in order to resolve all of the objections made.